AO 91 (Rev. 11/11) Criminal Complaint
**CLERK'S OFFICE**
**A TRUE COPY**
**Sep 03, 2020**
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>CODY E. SMITH (DOB XX/XX/1987)<br><br>Defendant(s) | Case No. 20-M-360 (SCD) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 1, 2020** in the county of **Kenosha** in the **Eastern** District of **Wisconsin**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 922(g)(1) and 2; | Aiding and Abetting a Felon's Possession of Firearms |
| Title 18, United States Code, Section 922(g)(9); | Possession of Firearms and Ammunition by a Prohibited Person – misdemeanor domestic violence |
| Title 18, United States Code, Section 922(g)(3) | Possession of Firearms and Ammunition by a Prohibited Person – unlawful user of a controlled substance |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_/s/ Mary Davidson_
Complainant's signature

FBI SA Mary Davidson
Printed name and title

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: 09/03/2020

_/s/ Stephen C. Dries_
Judge's signature

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Mary Davidson, being first duly sworn on oath, on information and belief state:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May 2019. Since October 2019, I have been assigned to FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

2. This affidavit is submitted in support of an application for a criminal complaint and arrest warrants for MICHAEL M. KARMO (DOB: XX/XX/1980) and CODY E. SMITH (DOB XX/XX/1987), for their involvement in the criminal activity described below. More specifically, there is probable cause to believe that on or about September 1, 2020, in Kenosha County, in the Eastern District of Wisconsin, and elsewhere, KARMO violated Title 18, United States Code, Section 922(g)(1) (Felon in Possession of Firearms and Ammunition). In addition, there is probable cause to believe that on or about September 1, 2020, in Kenosha County, in the Eastern District of Wisconsin, and elsewhere, SMITH violated Title 18, United States Code, Sections 922(g)(1) and 2 (Aiding and Abetting a Felon's Possession of Firearms), Title 18, United States

Code, Section 922(g)(9) (Possession of Firearms and Ammunition by a Prohibited Person – misdemeanor domestic violence), and Title 18, United States Code, Section 922(g)(3) (Possession of Firearms and Ammunition by a Prohibited Person – unlawful user of a controlled substance).

3. This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other state and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, electronic and physical surveillance, physical evidence, and witness statements that I consider to be reliable as set forth herein. The facts of this affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

4. Because this affidavit is submitted for the limited purpose of a obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the complaint and arrest warrants.

## II. PROBABLE CAUSE

**Background**

5. Law enforcement has been engaged in monitoring and responding to civil unrest and violence occurring in Kenosha, Wisconsin, following the officer-involved shooting of Jacob Blake on August 23, 2020. That evening, violence erupted. Rioters set fire to and damaged numerous buildings and vehicles, including arson to local businesses involved in interstate commerce, public buildings, and law enforcement property. Several people have been injured. Wisconsin's Governor declared a state of emergency, and the National Guard was sent to Kenosha, Wisconsin. Many roads in Kenosha were closed to traffic, and the interstate highway exits near

Kenosha were closed during the unrest, restricting interstate commerce. Unrest and looting continued, with confrontations between large groups of rioters and law enforcement on August 24 to August 25, 2020. On the evening of August 25, 2020, reports and video show numerous shots fired, including an armed individual who is charged with killing two people and injuring one person. Civil unrest continued to varying degrees in Kenosha over subsequent days, and the unrest regularly received national media coverage. A visit by the President of the United States planned for September 1, 2020, also received national media attention.

**Travel to Kenosha & Possession of Firearms**

6. On September 1, 2020, at approximately 4:22 p.m. Central Time, the Kenosha Police Department advised FBI that a law enforcement agency in Iowa had received a tip that KARMO and an unidentified male were in possession of firearms and traveling from Missouri to Kenosha, Wisconsin, to loot and possibly "pick people off." The tip provided telephone number 619-708-3605 for KARMO. FBI also received photographs of text messages between KARMO and the tipster. The communications reflected that KARMO sent a photograph of himself holding a rifle and another white male holding what appeared to be a shotgun. KARMO sent another picture of a rifle with a drum-style magazine in it. KARMO included the message, "This is the game changer" with the photo. KARMO's text messages are shown below:

3



7. After receiving the tip, law enforcement observed publicly viewable postings on the Facebook page with username "Michael Karmo." The cover photo on the page is the following:



4

8. The Facebook page showed multiple pictures of an unidentified subject, believed to be KARMO, in possession of firearms, including assault-style rifles. The following is a post from August 27, 2020:



9. Examples from earlier posts included the following:



5







6

10. Based upon the information from the tipster and the Facebook records, on September 1, 2020, law enforcement obtained location data from AT&T for telephone number 619-708-3605. At approximately 6:48 p.m., records reflected that the mobile device operating with telephone number 619-708-3605 was in the area of the La Quinta Hotel & Inn located at 7540 118th Avenue, in Pleasant Prairie, Wisconsin. Records reflected that between on or about August 31, 2020 and September 1, 2020, MICHAEL M. KARMO (DOB: XX/XX/1980) and CODY E. SMITH (DOB: XX/XX/1987) drove across state borders from Missouri, to Iowa, and then to Wisconsin.

11. On September 1, 2020, at approximately 7:40 p.m., FBI located and detained KARMO and SMITH outside of a Toyota Highlander vehicle in the parking lot of La Quinta Hotel & Inn located at 7540 118th Avenue, Pleasant Prairie, Wisconsin. The vehicle was registered to Raad Jamil Karmo, with an address in Bonita, California.

12. FBI received consent from KARMO and SMITH to search the 2019 Toyota Highlander, California registration 8NST519, VIN number 5TDZZRFH4KS361018. The following items were recovered from the vehicle:

   a. A black EP Armory AR-15, with muzzle device and optic, in gun case, bearing no Serial Number;

   b. A Mossberg 500 AB 12-Gauge shotgun, bearing Serial Number 086982;

   c. A Taurus PT92AF 9mm handgun, bearing Serial Number TIA60420;

   d. A homemade silencer-type device;

   e. Four (4) 30-round 5.56x45 caliber rifle magazines. One was empty, one had two rounds, and two were partially loaded with green-tip ammunition;

   f. Two (2) 15-round, 9mm, handgun magazines, unloaded;

   g. A black Ruger case containing two (2) 17-round, 9mm pistol magazines, fully loaded, plus three (3) 9mm rounds;

7

  h. Five (5) 12 Gauge shotgun shells;

  i. A black, 9mm magazine, partially loaded;

  j. A black, firearm muzzle attachment;

  k. A black Typhoon Drone with components in case;

  l. An Army ACU pattern body armor, bearing Serial Number AR817651;

  m. Black Molle tactical gear;

  n. A black, LG2 cellular telephone, Model LM-Q710WA;

  o. A small plastic bag containing a green leafy substance that field-tested positive for marijuana;

  p. An orange and blue pipe that field-tested positive for the presence of marijuana;

  q. A Safariland right leg holster; and

  r. A folding knife, Brand Cold Steel, Model type Voyager, 5 ½" serrated blade.

 13. KARMO and SMITH also consented to a search of their hotel room, Room 148, at the La Quinta Hotel & Inn. The following items were recovered from the hotel room:

  a. A Ruger 9mm handgun, bearing Serial Number 336-16364 with one (1) 9mm round in chamber and one (1) magazine containing nine (9) 9mm rounds;

  b. A Brand Cold Steel dagger, Model type Oyabun, 8 ¾" tanto blade with sheath;

  c. A twisted cable survival saw;

  d. A Remington 9mm Luger FMJ, 115 grain 100-round box with sixty-seven (67) rounds;

  e. One hundred thirty-one (131) 12 Gauge shotgun shells;

  f. A black Samsung S9+, model number SM-G965U; and

  g. An ACER laptop computer, Model – N15Q9.

14. KARMO and SMITH also consented to a search of their mobile telephones: a black Samsung S9+ (SMITH's); and a black LG2 cellular telephone (KARMO's). The telephone number associated with SMITH was 660-342-8785. SMITH had a contact listed as "KARMO" with telephone number 619-708-3605. The telephone number associated with KARMO's recovered cellular telephone was 619-708-3605, the same phone number provided subject to the emergency ping. A download of KARMO's phone revealed multiple photos of firearms, including a photo of KARMO in possession of a firearm. In addition, KARMO's text messages are consistent with his distribution of methamphetamine and Percocet.

15. KARMO has prior convictions for vehicle theft, burglary, violation of parole, felon in possession of firearm, evading peace officer resulting in injury/death, receive known stolen property, and possession of controlled substances in California, some of which are felonies. Therefore, KARMO was prohibited from possessing firearms and ammunition on September 1, 2020.

16. SMITH has a prior 2009 misdemeanor domestic battery charge from the State of California: Riverside County Case Number INM194727. According to the complaint in that matter, the victim was a spouse, ex-spouse, individual with whom Smith had been cohabitating, or individual with whom SMITH had a child. Therefore, SMITH was prohibited from possessing firearms and ammunition on September 1, 2020.

17. On September 1, 2020, at approximately 3:00 a.m., FBI received a report from a local police department in Iowa regarding its encounter with the tipster (hereinafter "citizen witness" or "CW") described above in Paragraph 6. The initial report detailed that KARMO was traveling from Missouri to Kenosha, Wisconsin, on September 1, 2020. CW had planned to go to Kenosha with KARMO to loot, but CW decided not to go.

18. According to the Iowa report, KARMO told CW that people were going up to Kenosha and "picking people off"; however, KARMO did not state that he personally would do that.

19. On September 2, 2020, law enforcement officers met with CW again. CW reported that KARMO frequently walked around with a firearm in his waistband and played "Rambo" in the backyard with various firearms. CW has seen KARMO with 3-4 guns in his possession within the last few months. He bought firearms through the mail and manually put the firearms together himself "shaving down the firing pin" and making the firearms untraceable to law enforcement.

20. As far as the activity on August 31, 2020, CW reported that when CW met with KARMO, he was with a white male CW did not know. KARMO told CW he had two firearms in the vehicle, but CW did not see them that evening. KARMO told CW he was going to go to Kenosha with the intention of possibly using the firearms on people. CW feared that with KARMO's increase in conspiracy theory talks and other "crazy" political talk he was not in the right mind set to have a firearm.

21. A Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined all of the seized firearms and determined that none of the firearms were manufactured in Wisconsin and had all traveled in interstate commerce prior to September 1, 2020. The agent also reported that the EP Armory AR-15, black, with muzzle device and optic, was a home-made firearm insofar as the receiver was manufactured in Texas, but the remaining parts of the firearm would have been obtained from a build kit to complete the AR-15.

**Interviews of Smith & Karmo**

22. SMITH was interviewed by FBI agents on September 1, 2020. After waiving his Miranda rights, SMITH indicated that he and KARMO traveled from Missouri, where they lived

together, to Kenosha for the President Trump rally on September 1, 2020. After their visit to Wisconsin, they intended to travel to Detroit, Idaho, Washington, and Oregon. SMITH described that he had an uncle in the Northwest who owned a dispensary and could supply them with marijuana.

23. SMITH explained that he and KARMO left their home in Missouri around 4:00 p.m. on August 31, 2010. Around 2:00 a.m. on September 1, 2020, they stopped to visit a friend of KARMO's in Iowa. From there, they drove approximately four hours to Kenosha, where they arrived early in the morning on September 1, 2020.

24. SMITH stated they attended the rally for President Trump outside of the high school in Kenosha. SMITH stated they wanted to see proof of the rioting. He reported that both of the pistols were locked in the glove compartment of KARMO's vehicle while they were at the rally. They brought the guns because they did not want to leave them unattended in the hotel room.

25. Regarding the firearms recovered by law enforcement, SMITH initially stated that he currently had eleven firearms, four (4) of which he brought to Kenosha. SMITH later stated that one of the four firearms brought to Kenosha, the pistol (the Taurus PT92AF 9mm handgun), belonged to KARMO. SMITH reported that KARMO bought the handgun from an employee at Missouri Cooperage, where they both worked. SMITH reported that KARMO also owned an assault rifle.

26. SMITH stated that he and KARMO took a picture of themselves holding the long guns while they were packing for their trip to Kenosha, Wisconsin.

27. When questioned about what appeared to be a silencer found in the vehicle, SMITH stated that the silencer belonged to KARMO. He described it as being made of thin metal and

11

washers. SMITH did not believe that the silencer worked, but KARMO wanted to test it. SMITH reported the silencer could be used on a 9mm handgun and an assault rifle.

28. SMITH acknowledged that he knew that KARMO was a convicted felon and that KARMO could not legally possess a firearm.

29. SMITH stated that he and KARMO regularly smoked marijuana after work. He stated that he used marijuana as a form of self-medication almost every night. SMITH also stated he used cocaine and methamphetamines in the past.

30. When discussing his criminal history, SMITH explained that when he was approximately 24 years old, he caught his girlfriend cheating on him and wrecked her car. At the time, SMITH and his girlfriend lived in California. She pressed charges and SMITH was arrested for domestic abuse. SMITH claimed not to remember the details clearly because he was using marijuana.

31. After waiving his rights, KARMO also agreed to speak with agents. The interview was recorded. KARMO stated that KARMO and SMITH have been roommates in Hartville, Missouri, for approximately four weeks. They worked together and are part of the 417 Second Amendment Militia. On August 31, 2020, KARMO and SMITH decided to drive to Kenosha to "see for themselves" what was going on regarding the riots. On the way, they stopped in Iowa to visit someone KARMO knew. KARMO stated that he was offended because this individual commented that KARMO and SMITH looked like they were heading to Kenosha to shoot people.

32. KARMO stated that KARMO and SMITH then drove to a La Quinta Hotel in Pleasant Prairie, Wisconsin. They arrived between 3:00 a.m. and 4:00 a.m. on September 1, 2020. KARMO stated that later in the morning, they attended the "Make America Great Again" rally at the high school. KARMO stated that they parked their vehicle with all of their belongings near

the rally. After the rally, KARMO and SMITH went back to the hotel, and they planned to see what Kenosha was like at night. KARMO stated that after Kenosha, they planned to go to Portland, Oregon, to see for themselves what was going on. KARMO stated that he would be willing to "take action" if police were defunded.

33. KARMO claimed that he did not own any firearms except an air rifle. KARMO stated that his prints "probably" were not on any of the guns but could be on the boxes they were in from moving luggage around in the vehicle. KARMO claimed he had not shot a gun for many years. KARMO stated that SMITH brought all of his guns except one Palmetto State Armory AR rifle, which was left at home. KARMO stated that he knew it was risky to be around people with guns. KARMO explained that it was worth the risk in the event KARMO ever needed to use a gun to protect himself or others. KARMO claimed that he never carried a pistol and that he only brought body armor and a drone on their trip.

34. KARMO stated he was aware of a domestic violence conviction SMITH had in California. KARMO claimed that he did not know anything about any suppressors or silencers found in their vehicle. Regarding a letter found in his hotel room, KARMO stated that he wrote the letter to his sons approximately five years prior to explain that he had a calling to leave California and learn to live off the land.

### III. CONCLUSION

35. Based on the facts contained within this affidavit, there is probable cause to believe that on or about September 1, 2020, in Kenosha County, in the Eastern District of Wisconsin, and elsewhere, KARMO violated Title 18, United States Code, Section 922(g)(1) (Felon in Possession of Firearms and Ammunition). In addition, there is probable cause to believe that on or about September 1, 2020, in Kenosha County, in the Eastern District of Wisconsin, and elsewhere,

SMITH violated Title 18, United States Code, Sections 922(g)(1) and 2 (Aiding and Abetting a Felon's Possession of Firearms), Title 18, United States Code, Section 922(g)(9) (Possession of Firearms and Ammunition by a Prohibited Person – misdemeanor domestic violence), and Title 18, United States Code, Section 922(g)(3) (Possession of Firearms and Ammunition by a Prohibited Person – unlawful user of a controlled substance).